UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERNEST J. CARDILLO JR.<br><br>Plaintiff<br><br>v.<br><br>TOWN OF STOCKBRIDGE,<br>STOCKBRIDGE SELECT BOARD,<br>DONALD M. CHABON and<br>TERENCE R. FLYNN in their<br>official and individual capacity as<br>Selectmen<br><br>Defendants | VERIFIED COMPLAINT and<br>REQUEST FOR<br>INJUNCTIVE RELIEF |

## INTRODUCTION

1. Ernest J. Cardillo Jr. (hereinafter "Plaintiff") brings this action for violations of First Amendment Rights of the United States Constitution, Massachusetts Civil Rights, certiorari, and declaratory relief against the Town of Stockbridge, the Stockbridge Select Board, Donald M. Chabon and Terence R. Flynn, in their official and individual capacities (hereinafter "Board") in connection with the Board's decision to terminate Plaintiff's employment contract as Fire Chief of the Town of Stockbridge through the use of unequal standards, collusion, and adverse political motivation.

## PARTIES

2. Plaintiff is an individual with an address of 7A East Street, Stockbridge, Massachusetts.

3. Defendant, Town of Stockbridge, is a municipality located in Western Massachusetts with a principal place of business of 50 Main Street, Stockbridge, Massachusetts.

4. Defendant, the Select Board, is a Town board with a principal place of business of 50 Main Street, Stockbridge, Massachusetts.

5. Defendant, Donald M. Chabon, (hereinafter "Chabon") is a Selectman of the Town of Stockbridge with a principal place of business of 50 Main Street, Stockbridge, Massachusetts.

6. Defendant, Terence R. Flynn, (hereinafter "Flynn") is a Selectman of the Town of Stockbridge with a principal place of business of 50 Main Street, Stockbridge, Massachusetts.

## JURISDICTION

7. Plaintiff asserts federal jurisdiction under 42 U.S.C. § 1983, and pendent jurisdiction of his state law claims under 28 U.S.C. § 1367.

## STATEMENT OF FACTS

8. On or about July 1, 2012, Plaintiff entered into an employment contract with the Town of Stockbridge as its first full-time Fire Chief. Plaintiff was elected and served his first term as Selectman in 2012, and is currently serving as Selectman.

9. Plaintiff was also employed as the Town's emergency medical technician (EMT) and fire inspector.

10. In 2012, Plaintiff also acted as the de facto procurement officer for the Fire Department, although he was never designated that duty by the Town Administrator nor given any training in that regard.

11. Plaintiff always received positive yearly employment performance reviews and completed many courses and programs in furtherance of his employment.

12. In May of 2016, Plaintiff petitioned the State Ethics Commission for a waiver to allow him to serve as Fire Chief and Selectman at the same time. The Ethics Commission gave a favorable opinion, and Plaintiff, at all times relevant hereto, served the Town in both positions.

13. When Plaintiff ran for office, he faced opposition from Flynn in a strongly worded editorial published in the Berkshire Eagle newspaper. Flynn would be elected Selectman in the following election.

14. On or about October 1, 2012, Plaintiff was contacted via telephone by Pioneer Products, Inc. and later by Noble Industrial Supply Corp. (hereinafter collectively "the Corporations"), regarding the purchase of fire station supplies.

15. Plaintiff agreed to purchase hose and gear cleaner at a price of $229.04. This and all subsequent orders were made by telephone and initiated by the Corporations.

16. On or about November 15, 2013, Plaintiff was contacted again by the Corporations regarding hose and gear cleaner which resulted in an order for $532.69.

17. The Corporations began to double the products shipped and informed Plaintiff, if he did not accept the products, they would have to bill him full price for prior orders, which they claimed to have discounted. This occurred for twenty-one (21) transactions over a six (6) year period.

18. The Corporations would change and/or substitute the products once Plaintiff stated "he had enough." They would continue sending materials such as foam, truck wash, fire wipes, ice melt and/or a combination of products after every phone call.

19. The Corporations would provide invoices to the Town which Plaintiff would sign and forward to the Town Accountant for payment. The amounts paid to the Corporation for the first five years were in increments under $10,000.00 per invoice.

20. In May of 2018, Plaintiff was re-elected to his third term as Selectman of the Town and his Fire Chief contract was extended for three years.

21. In July and August of 2018, the Corporations sent invoices for product in amounts over $10,000.00 which were not paid by the Town.

22. In August of 2018, the Town Administrator, Danielle Fillio, refused to pay the invoices after consulting with Cardillo.

23. In September of 2018, the matter came to the attention of the other Select Board members, Flynn and Chabon, who contacted Town Counsel, J. Raymond Miyares (hereinafter "Miyares"), and directed him to conduct an investigation and write a report.

24. On or about November 27, 2018, Miyares provided the Town with a report which outlined the purchase of the products from the Corporations and concluded that most orders did not require the three bid procurement requisite pursuant to M.G.L. c. 30B and that Plaintiff had no procurement powers delegated to him.

25. The report further concluded the Town had been defrauded by a scam and that the Corporations had victimized multiple small towns and non-profit organizations throughout New England.

26. The current individual with procurement powers is the Town Administrator. No further powers have been delegated to other department heads, and such powers have remained under the Town Administrator's control since her appointment in June of 2017.

27. The Miyares' report concluded that all department heads should follow M.G.L. c. 30B and that the Town Administrator should be responsible for all procurements.

28. It is alleged that in December of 2018, Flynn and Chabon went to the Fire Department and sought to find an interim replacement for Plaintiff as Fire Chief.

29. In December of 2018, the Select Board conducted its first executive session meeting with Plaintiff following the Miyares report. In the session, Flynn and Chabon suggested Plaintiff would have job security within the Town and they would work through this issue(s) internally.

30. Shortly thereafter, Flynn and Chabon forwarded a draft agreement to Plaintiff by which Plaintiff would be required to resign, first and foremost, as Selectman and then as Fire Chief.

The agreement also provided that if he resigned as Selectman, he may retain employment with the Fire Department in the role of an EMT.

31. On or about December 17, 2018, the Board convened a second executive session in which they outlined a plan to keep Plaintiff employed by the Town in an inferior position, but not within the Fire Department, as he would be terminated as Chief. Plaintiff was not informed to bring counsel to this meeting, and Flynn and Chabon further discouraged Plaintiff from retaining counsel.

32. Plaintiff determined he needed an opportunity to be heard regarding his position as Chief as he had not received any progressive discipline as required by his contract, and felt that this was a politically motivated attack. Plaintiff further states other Town employees have engaged in questionable acts and/or omissions known to the Board and have not faced any discipline. Plaintiff demanded a public executive session and retained counsel.

33. On or about January 29, 2019, Plaintiff was notified that a public executive session was to be convened on February 5, 2019.

34. On or about February 5, 2019, the Board made the following conclusions and findings of fact, outlined herein in subsections (a) to (f), as follows with regard to the issues identified below:

    (a)    Whether Plaintiff failed to manage and account for all departmental expenditures as required by the contract.

            The Board concluded that departmental expenditures made to Pioneer Products, Inc., and Noble Industrial Supply Corp., were not properly managed, and that Plaintiff's accounting of these expenditures was insufficient to allow proper review and oversight by the Town Accountant.

    (b)    Whether Plaintiff failed to prepare and submit a proper departmental budget so as to avoid budgetary shortfalls.

            The Board found that the budgetary shortfalls for FY'17 and FY'18 were due, in significant part, to the large expenditures made to Pioneer Products, Inc. and Noble Industrial Supply Corp. during those years. However, the Board concluded that the departmental budgets that Plaintiff prepared and submitted would have been adequate to avoid budgetary shortfalls if he had limited expenditures to budgeted amounts.

    (c)    Whether, in violation of applicable procurement law requirements, Plaintiff failed to ensure the exercise of sound business practices and, where necessary, allow for three written quotations to be sought in the purchase of supplies from Pioneer Products, Inc., and Noble Industrial Supply Corp.

> The Board stated, the record is clear that Plaintiff consistently failed to meet the minimum requirements of applicable law over the course of seven fiscal years.

(d) Whether Plaintiff failed to notify the Select Board, Town Administrator, or Town Accountant when he was being pressured to accept delivery of unneeded supplies from the Corporations at higher than fair market price.

> The Board stated, the record is clear that Plaintiff kept silent, rather than notifying any other Town official. The Board further found that Plaintiff's silence was the direct cause of the Town's losses at the hands of the two vendors in question.

(e) Whether Plaintiff falsified departmental records in order to conceal the purchase of unneeded supplies from the Corporations at higher than fair market price(s).

> The Board states, department records, including worksheets and spreadsheets are official Town documents. As a result of Plaintiff's incorrect entries, anyone reviewing the records would have an incorrect understanding of the costs and types of supplies procured by Plaintiff for the Fire Department over several years. While the Board is troubled by these errors, the evidence is insufficient to conclude that falsification was intentional.

(f) Whether, during Plaintiff's administrative leave, Plaintiff attempted to undermine the authority of the Acting Chief and Select Board or failed to cooperate with their management efforts, against the best interests of the Fire Department and the Town.

> The Board does not conclude that the record clearly shows that Plaintiff directly attempted to undermine the Acting Chief; it concludes that there is sufficient evidence to demonstrate that Plaintiff's working relationship with the Acting Chief has not been at the level of commitment required by a member of the Fire Department.

35. The Board concluded that Plaintiff would be terminated for cause despite a lack of adequate evidence, and that the progressive discipline clause of his contract would not be honored. The Board cited its authority under the "Strong Chief" statute, M.G.L. c. 48, § 42, which is limited to the appointment or removal of the Chief. They assert their authority was properly exercised.

## COUNT I
### FIRST AMENDMENT VIOLATIONS (POLITICAL DISCRIMINATION AND RETALIATION) Town of Stockbridge, the Stockbridge Select Board, Donald M. Chabon and Terence R. Flynn, in their official and individual capacity.

36. Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

37. The First Amendment of the United States Constitution guarantees the right to freedom of speech, the right to freedom of expression, the right to freedom of association, the right to assemble and to petition the Government for redress, the right to vote, and the right to affiliate with a political party of one's choosing.

38. It is also well established that government bodies or officials, or individuals acting under color of state law and/or whose acts constitute state action, are forbidden by the First Amendment from discriminating, retaliating, abusing their authority, or taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment.

39. Similarly, the First Amendment protects public employees from discrimination, retaliation, being subjected to abuses of authority, or suffering adverse employment actions in response for engaging in political activity, unless political loyalty is an appropriate requirement of the employment.

40. The Defendants, named herein, have subjected Plaintiff to termination of his employment, denial of his benefits, a double standard, deprivation of his duties, work conditions inferior to the norm, and a demand that he resign as Selectman and Fire Chief in order to stay employed by the Town in an inferior position, all of which constitute actionable adverse employment actions protected by the First Amendment.

41. It is clear that Plaintiff's First Amendment speech and activities were a substantial or motivating factor in the adverse employment actions complained of herein. Leveraging adverse employment action against Plaintiff unless he resigned as Selectman deprived Plaintiff of his First Amendment Rights.

42. The Defendants' actions have caused a chilling effect on Plaintiff's First Amendment Rights and his exercise of First Amendment protected activity.

43. As a consequence of the Defendants' actions, Plaintiff suffered and continues to suffer damages, including, but not limited to: loss of income, loss of employment benefits, other financial losses, loss of professional opportunities, damage to his reputation, and loss of community standing.

## COUNT II
MASSACHUSETTS CIVIL RIGHTS (M.G.L. c. 12, §§11H, I) Town of Stockbridge, the Stockbridge Select Board, Donald M. Chabon and Terence R. Flynn, in their official and individual capacity.

44.     Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

45.     The Defendants, in their official and individual capacities, have attempted to interfere with, and have interfered with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States, and the Constitution and laws of the Commonwealth, by use of threats, intimidation, and coercion, violating his right to free speech and equal protections under the laws.

WHEREFORE, Plaintiff demands judgment against the Defendants on this Count plus interest and costs of this action, and reasonable attorney fees as provided under M.G.L. c. 12, §11I.

## COUNT III
## CERTIORARI

46.     Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

47.     G.L. c. 249, § 4 authorizes a party to bring a civil action in this Court in the nature of certiorari to correct errors in a Commission's proceedings that contravene the contract/common law, which are not otherwise reviewable by motion or appeal.

48.     There were numerous errors in the Board's proceedings that contravened the common law and M.G.L. c. 30A-30B, which are not reviewable by motion or appeal. Those errors occurred in the termination of Plaintiff as Fire Chief. Plaintiff has no other reasonably adequate remedy to correct the Board's errors.

49.     The Board's hearing on February 5, 2019 regarding Plaintiff's employment was a quasi-judicial proceeding and their findings are contained in Paragraphs 34 to 35, above.

50.     Plaintiff states his termination is in contravention of contract/common law and violated M.G.L. c. 30A-30B as follows:

   (a)   Plaintiff's employment contract did not specifically contain a delegation of procurement authority as required by M.G.L. c. 30B. Plaintiff on his own accord created spreadsheets to balance his budget and keep the department stocked with adequate supplies. Plaintiff did account for all expenditures made to the Corporations and no evidence was offered that he attempted to mislead the Town Accountant. The record reflects he used his own system to account for his budget;

his system may have been flawed, but its use does not equate to a violation of his contract to manage and account for departmental expenditures. The Town had a duty to seek uniformity in accounting practices between various department heads and failed to implement a structured system. The use of hindsight by the Board does not constitute a contract violation on Plaintiff's behalf for the Town's failure to abide by M.G.L. c. 30A-30B.

(b) The Board is alleging budgetary shortfall for the FY'17 and FY'18 based on the Corporations' billing. The illegal tactics used by the Corporations led to this shortfall, as opposed to Plaintiff's budgetary practices for this period. The Board contradicts itself with its first finding that Plaintiff failed to manage and account for departmental expenditures, as it later states in the second finding that his budget would have been adequate but for the Corporations' scam.

(c) The Town had not complied with the obligations of M.G.L. c. 30A-30B and appears to waive its requirements for department heads in various, if not all departments. Based on the Town's conduct, the failure to delegate, train, and hold all department heads accountable to the same requirements results in a double standard in the Town employment pool, which cannot later be used to show cause without uniform guidelines in place. The Town had a contractual obligation to implement progressive discipline on Plaintiff, which the Town failed to do. Instead, the Town used an alleged violation of the statute that they themselves do not follow. It appears to be a politically motivated attack, as supported by the Board's offer of continued employment by the Town in exchange for Plaintiff's resignation as Selectman and Fire Chief.

(d) The Town was notified by Plaintiff via the advancement of the invoices to the Town Accountant/Town Administrator. Plaintiff had no knowledge the supplies were over market price(s).

(e) The Board admits that other Town employees exercised non-delegated procurement authority. The Board further admits to not delegating procurement authority or properly training persons to fulfill these roles.

(f) The record does not support the allegation that Plaintiff attempted to undermine the Acting Chief or had taken any steps to disrupt management of the Fire Department. The Board made an additional allegation of undermining the Select Board but did not offer any factual support, which suggests a politically motivated attack.

51. Accordingly, this Court should annul the Board's decision, restore Plaintiff's position, award back pay, attorney fees, and costs.

## COUNT IV
## DECLARATORY JUDGMENT

52. Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

53. This Court is authorized to issue binding declarations of the rights, duties, status, and other legal relations of parties under statutes and administrative regulations, including determinations of any question of construction or validity, in any case in which an actual controversy has arisen. G.L. c. 231A, §§ 1, 2.

54. This Court also is empowered to issue binding declarations under G.L. c. 231A, § 1 to enjoin and determine the legality of the administrative practices and procedures of any quasi agency alleged to be in violation of the laws of the Commonwealth of Massachusetts. G.L. c. 231A, § 2.

55. When Plaintiff accepted employment with the Town in 2012 and again in 2016, he faced strong opposition to his political status and participation from soon-to-be Select Board member Flynn, as evidenced by a strongly worded editorial published in the Berkshire Eagle newspaper.

56. In 2016, Plaintiff had been given a favorable opinion by the State Ethics Commission to fulfill the dual role of Selectman and Fire Chief.

57. In December 2018, it is alleged Flynn and Chabon sought out an interim Fire Chief to replace Plaintiff before any executive sessions or hearings took place.

58. In the December of 2018 executive session, the Select Board, comprising Flynn and Chabon, felt the Plaintiff's dual role as Selectman and Fire Chief was a conflict of interest. They used this philosophy to mobilize their political attack and offered Plaintiff two options: (1) resign as Selectman and Fire Chief or face termination, or (2) comply with the Board's demand for resignation, and an alternative work arrangement will be granted for Plaintiff at either the Fire Department or elsewhere under the jurisdiction of the Town.

59. The Plaintiff never received adequate training on the violations of which he stands accused, nor was he provided with any progressive discipline as required by his employment contract.

60. Plaintiff was strongly advised by the Board not to seek counsel; there would be consequences if this matter went to a public session.

61. Plaintiff was terminated by the Select Board and accused of attempting to undermine the Fire Department and the Town. The Select Board offered no evidence to support their allegations.

62. An actual controversy has arisen between the Plaintiff and the Board regarding the legality of Plaintiff's termination and the Board's erroneous decision to support his termination.

63. Pursuant to G.L. c. 231A, §§ 1 and 2, this is an appropriate case for this Court to issue a binding declaration regarding the status and rights of Plaintiff's contract and the evidence relied upon to support the Board's decision of termination.

64. The Court should reinstate Plaintiff as Fire Chief with back pay and attorney fees.

65. This Court should issue a declaratory judgment that Plaintiff's termination was not supported by adequate evidence and the Board violated the terms of his contract.

## COUNT V
## BREACH OF CONTRACT

66. Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

67. Plaintiff had a written employment contract with the Town.

68. Plaintiff fully performed his duties and obligations under the contract.

69. Town failed to use progressive discipline against Plaintiff.

70. Town breached its contract by firing Plaintiff without cause.

71. As a result of the Town's breach, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT VI
## INJUNCTIVE RELIEF

72. Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

73. Plaintiff and the Town had a valid contract that was willfully breached by the Defendants.

74. Plaintiff's position as Fire Chief is a specialized job that is unique and requires highly skilled training, for which Plaintiff is well qualified.

75. To avoid permanent injury and irreparable harm to Plaintiff, issuing the injunction outweighs the harm or damage to the Town.

76. Granting this injunction will not disserve the public interest due to the immediate irreparable harm it will prevent.

77.   Plaintiff requests that this Court waives all security relative to this action.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court:

1. Find the decision of the Board to be null and void based on the foregoing assertions.

2. Enter a declaratory judgment on Count II that allows for Plaintiff reinstatement; and

3. Enter a preliminary and permanent injunction against the Board enjoining Plaintiff's termination, pending trial.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL CLAIMS SO TRIABLE.**

Dated: April 11, 2019

Respectfully submitted,
Ernest J. Cardillo Jr., Plaintiff
By his Attorney,

Robert M. Fuster, Sr.
27 Henry Avenue
Pittsfield, MA 01201
413-442-1800
BBO # 181880

## VERIFICATION

I, Ernest J. Cardillo Jr., state that I have read the allegations set forth in the Verified Complaint and Request for Preliminary Injunction, and that they are true to the best of my knowledge, information and belief, which are signed under the pains and penalties of perjury.

Ernest J. Cardillo Jr.

April 11, 2019

COMMONWEALTH OF MASSACHUSETTS

Berkshire, SS.                                                                                          April 11, 2019

On this 11th day of April, 2019, before me, the undersigned notary public, personally appeared Ernest J. Cardillo Jr., proved to me through satisfactory evidence of identification, which was a license, to be the person whose name is signed on the preceding or attached documents, and acknowledged to me that she signed it voluntarily for its stated purpose.



Notary Public – Susan Pensivy

My Commission Expires: 11/4/2022