UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERNEST J. CARDILLO, Jr. | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:19-cv-10695-KAR |
| | ) | |
| | ) | |
| TOWN OF STOCKBRIDGE, | ) | |
| STOCKBRIDGE SELECT BOARD, | ) | |
| DONALD CHABON, and | ) | |
| TERENCE R. FLYNN, in their Official | ) | |
| and Individual Capacity as Selectmen, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Dkt No. 39)

ROBERTSON, U.S.M.J.

This case arises out of the February 5, 2019 firing of the plaintiff, Ernest J. Cardillo, Jr.,

("Cardillo" or "Plaintiff"), from his employment as Fire Chief for the Town of Stockbridge ("the

Town"). Cardillo alleges that the termination of his employment violated his First Amendment

rights because it was motivated by the dual role he held as a member of the Stockbridge Select

Board ("the Board") and the Town's Fire Chief. By his complaint, Cardillo has asserted a claim

against the Town, the Board, and fellow members of the Board, Donald M. Chabon ("Chabon")

and Terence R. Flynn ("Flynn"), (collectively, "Defendants") for violation of his rights under 42

U.S.C. § 1983 (Count I). Plaintiff also brings a claim against the Board, Chabon, and Flynn

pursuant to the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11 H, I

1

(Count II),[1] and against the Town for breach of contract (Count V), and he seeks relief in the nature of certiorari (Count III), a declaratory judgment (Count IV), and injunctive relief (Count VI).  Defendants have moved for summary judgment on all counts of Plaintiff's complaint (Dkt. No. 39).  The parties have consented to this court's jurisdiction (Dkt. No. 17).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the following reasons, the court ALLOWS Defendants' motion with respect to all claims against the Board, and Count I, and Count VI, and dismisses the pendant state law claims in Counts II-V without prejudice.

## I.      STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' when a rational factfinder could resolve it either direction."  *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).  "A fact is 'material' when its (non)existence could change a case's outcome.  *Id*. (citing *Borges*, 605 F.3d at 5).

A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'"  *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325).  If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into

---

[1] Plaintiff originally asserted his MCRA claim against the Town as well, but the parties stipulated to its dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) (Dkt. No. 13).

dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at

325). The record is viewed in favor of the nonmoving party, and reasonable inferences are

drawn in the nonmoving party's favor. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d

411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st

Cir. 2015)).

## II.    FACTUAL BACKGROUND

In 2012, Plaintiff was appointed to the position of Fire Chief for the Town (Dkt. No. 47 at

¶ 1). During his first year as Fire Chief, Plaintiff received an unsolicited telephone call from a

representative of Pioneer Products, Inc. ("Pioneer"), and he agreed to purchase supplies for the

Fire Department from Pioneer (Dkt. No. 47 at ¶ 10). Shortly thereafter, Pioneer contacted

Plaintiff again and advised him that the price paid for the first order was contingent on accepting

an additional shipment and that if he did not agree to place an additional order, the company

would re-invoice the first purchase at a higher price (Dkt. No. 47 at ¶ 11). This pattern continued

for approximately the next six years, with Plaintiff receiving telephone calls from Pioneer, and

later an affiliated company, Noble Industrial Supply Corp. ("Noble") (Dkt. No. 47 at ¶ 12).

Representatives from the two companies would tell Plaintiff it was time to order more product

and that, if he did not, he would be charged additional monies for previous purchases (Dkt. No.

47 at ¶ 12).

In 2015, Plaintiff was elected to a seat on the Town's three-person Board (Dkt. No. 47 at

¶ 3). Due to an ethics law requirement, however, Plaintiff had to resign from the Board to be

reappointed as Fire Chief (Dkt. No. 47 at ¶ 4). Thereafter, Plaintiff obtained permission to hold

both offices, and he was re-elected (Dkt. No. 47 at ¶ 5). As a member of the Board, Plaintiff

recused himself from matters involving the Fire Department and did not vote on matters affecting his employment (Dkt. No. 47 at ¶ 6).

In 2018, the two other members of the Board, Chabon (elected in 2016) and Flynn (elected in 2017), voted to renew Plaintiff's employment contract as Fire Chief (Dkt. No. 47 at ¶¶ 7-9).  Later that same year, the purchasing scam to which Plaintiff had fallen victim came to light (Dkt. No. 47 at ¶¶ 13-14).  The Board initiated an investigation, and on November 27, 2018, Town Counsel issued a report concluding that the Town suffered losses of at least $25,000 as a result of the scam (Dkt. Nos. 47 at ¶¶ 14-15; 40-11).  The report indicated that the purchases from Pioneer and Noble appeared to be in violation of the Uniform Procurement Act, Mass. Gen. Laws ch. 30B, insofar as they were not undertaken by the Town's Chief Procurement Officer or another appointment to whom procurement authority had been delegated, sound business practices and (where applicable) the solicitation of three written quotations were not utilized, and files containing all required written documents pertaining to procurements in excess of $10,000 were not maintained (Dkt. No. 40-11).

Several days after Town Counsel's report, on December 6, 2018, the Board held an executive session meeting where the Plaintiff, Chabon, and Flynn discussed Plaintiff's future as an employee of the Town and as a Board member (Dkt. No. 47 at ¶¶ 16-18).  During the meeting, Flynn discussed a proposal whereby Plaintiff would stay on as a town employee in a newly created position as a full-time EMT, firefighter, and fire inspector, but only upon his resignation as a member of the Board and Fire Chief (Dkt. No. 47 at second ¶ 2).  Flynn stated that resignation from both positions was "essential" to the offer (Dkt. No. 47 at second ¶ 2). While Chabon advised Plaintiff that he had every right to remain as a member of the Board,

Flynn indicated that they had just cause to fire Plaintiff for violating the procurement laws under

Mass. Gen. Laws ch. 30B if he did not resign as Fire Chief (Dkt. No. 47 at second ¶¶ 3- 4).

On December 17, 2018, the Board held another executive session, in which they were

joined by the Town Administrator and Town Counsel (Dkt. No. 47 at ¶¶ 20-21).   Plaintiff had

requested to have the meeting postponed until he retained counsel, but his request was denied

(Dkt. No. 47 at second ¶ 10).   Plaintiff was presented with a proposed amendment to his

employment contract that had been prepared by Town Counsel (Dkt. No. 47 at ¶¶ 22-23).   As

discussed at the previous meeting, the amendment called for Plaintiff to resign from the Board

and step down as Fire Chief but would have allowed him to retain a full-time position with the

Fire Department without any loss of pay or benefits (Dkt. No. 47 at ¶¶ 22-23).   Plaintiff was

given 21 days to review the proposal (Dkt. No. 47 at ¶ 24).   In the meantime, Chabon and Flynn

voted to place Plaintiff on partial administrative leave, such that he would no longer serve as Fire

Chief, but would continue to perform his other duties, despite the emergence of concerns about

the Town's safety (Dkt. No. 47 at ¶ 25, second ¶ 11).

Before the expiration of the 21-day period, Plaintiff, through counsel, wrote to the Board

rejecting the proposed amendment to his employment contract (Dkt. No. 47 at ¶ 26).   Thereafter,

Plaintiff was notified of an executive session of the Board to be held on February 5, 2019 (Dkt.

No. 47 at ¶ 27).   On that date, in another executive session with Chabon and Flynn acting as the

Board, a hearing was held at which Plaintiff was present and represented by counsel (Dkt. No. 47

at ¶ 28).   Town counsel examined Plaintiff, and Plaintiff was given the opportunity to present

testimony and evidence (Dkt. No. 47 at ¶ 30).   At the hearing's conclusion, Chabon and Flynn

voted to terminate Plaintiff's employment, effective immediately (Dkt. No. 47 at ¶ 32).   Two

weeks later, on February 19, 2019, Chabon and Flynn sent Plaintiff a letter drafted by Town

counsel containing the final written decisions of the Board (Dkt. No. 47 at ¶ 33).

### III.   DISCUSSION

A. Claims Against the Board and for Injunctive Relief

Defendants have moved for summary judgment on all claims asserted against the Board

on the ground that it does not exist as a legal entity separate and apart from the Town, which

Plaintiff does not oppose.  Therefore, summary judgment is entered in favor of the Board on

Counts I and II of the complaint.  Similarly, Plaintiff does not oppose summary judgment in

favor of Defendants on his claim for injunctive relief (Count VI), which Defendants assert is

duplicative of his other claims and does not exist as a stand-alone cause of action under federal

or Massachusetts law.  Accordingly, summary judgment is entered in favor of Defendants on

Count VI of Plaintiff's complaint.

B. Count I: Violation of 42 U.S.C. § 1983

Plaintiff brings a claim under 42 U.S.C. § 1983 claiming that the Town, Chabon, and

Flynn violated his first amendment rights when they terminated his employment as Fire Chief

allegedly because of his membership on the Board.[2]  "The gravamen of his complaint is that he

has a right under the first amendment to engage in political activities (in particular, to [hold

office]), and that [Defendants] abridged that right by firing him."  *Rodriguez Rodriguez v. Munoz*

*Munoz*, 808 F.2d 138, 141 (1st Cir. 1986).  The parties disagree on the appropriate test for

analyzing Plaintiff's § 1983 claim.  Plaintiff maintains that this case should be analyzed under

the *Elrod-Branti* line of cases in which the Supreme Court addressed whether a public employee

could be discharged based on political affiliation.  *See Branti v. Finkel*, 445 U.S. 507 (1980)

---

[2] Plaintiff acknowledges in his memorandum in opposition to Defendants' motion for summary judgment that no other forms of expression, speech, or activities are in issue (Dkt. No. 48 at 7).

(involving the imminent discharge of two assistant public defenders by a newly appointed public defender based on their party affiliation); *Elrod v. Burns*, 427 U.S. 347 (1976) (involving the discharge or imminent discharge of three sheriff's office employees by the new sheriff based on their party affiliation).  In *Elrod*, the Supreme Court held that a discharge of a government employee because of political affiliation violates the freedom of association clause of the First Amendment.  *Id.*, 427 U.S. at 373.  However, "policymaking" positions were exempt from the general prohibition against terminating an employee based on political affiliation.  *Id.* at 372.  Four years later, in *Branti*, the Court reformulated the *Elrod* test, and held that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  *Branti*, 445 U.S. at 518.

Defendants argue that this case should be analyzed under *Rodriguez Rodriguez*, in which the First Circuit established guidelines for the district court to use in evaluating the constitutionality of terminating employment based on an employee's political activity, as opposed to affiliation.  *Id.*, 808 F.2d at 143-44.  The plaintiff in *Rodriguez Rodriguez* had been fired allegedly because of his plan to run for mayor against a candidate whom the defendant supported.  *Id.* at 141.  The court noted that "formulating the proper constitutional test for a discharge based on partisan political activity is a difficult, and vexed, task," because, "[i]n a sense," it presents a "hybrid case, implicating both political patronage on the one hand, and free speech on the other."  *Id.* at 144.  Thus, the court laid out guidelines addressing both aspects of the case.  First, relative to the partisan political activity element, the First Circuit directed the district court to determine whether the plaintiff's job was "best characterized as one where

political affiliation is an appropriate requirement, thus allowing politically-based discharge – or whether it is a job of the kind *Elrod-Branti* give absolute protection against discharge because of political affiliation." *Id*. at 144.  If the district court found that the plaintiff's position was one for which political affiliation was an appropriate requirement, it was directed to find the discharge constitutionally permissible and enter judgment for the defendant.  *Id*.  Conversely, if the court determined that the plaintiff occupied a position for which affiliation was not an appropriate requirement, the court was to address the free speech element by applying a balancing test weighing the first amendment rights of the plaintiff on the one hand, with the public employer's interest on the other.  *Id*. at 145-46.  Thus, the only difference between the test Defendants advance versus that proposed by Plaintiff is the application of a balancing test if the claim survives the *Elrod-Branti* analysis.

The court need not resolve which, if either, of the proposed tests is appropriate, however, because Plaintiff's case falters on the issue of causation that precedes the analysis of Plaintiff's first amendment claim.  Causation is determined according to the burden-shifting framework laid out in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977).  In *Mt. Healthy*, the Supreme Court held that, to prevail on a free speech claim, a plaintiff first must show that he engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the alleged adverse employment action.  *Id*. at 287.  *See also Welch v. Ciampa*, 542 F.3d 927, 936 (1st Cir. 2008).  If the plaintiff makes this showing, the defendant has the opportunity to show "by a preponderance of the evidence that it would have reached the same decision as to … [the adverse employment action] even in the absence of the protected conduct."  *Mt. Healthy*, 429 U.S. at 287; *see also Padilla–Garcia,* 212 F.3d at 74-78 (applying *Mt. Healthy* test).  The plaintiff may rebut defendant's *Mt. Healthy* defense with

evidence that it is in fact more likely than not that discrimination was a substantial or motivating factor in the adverse employment outcome. *Gutwill v. City of Framingham*, 995 F.3d 6, 12 (1st Cir. 2021) (citing *Stuart v. City of Framingham*, 989 F.3d 31, 35 (1st Cir. 2021)).

Plaintiff seems to imply, incorrectly, that *Mt. Healthy* is implicated only if the court adopts the *Rodriguez Rodriguez* hybrid analysis. "Although Mt. Healthy was a freedom of speech case, it is routinely applied to political discrimination cases of the *Elrod*/*Branti*/*Rutan* variety." *Sanchez-Lopez v. Fuentes-Pujols*, 375 F.3d 121, 130 (1st Cir. 2004) (citing *Padilla-Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 74 (1st Cir. 2000)). *See also Rojas-Velázquez v. Figueroa-Sancha*, 676 F.3d 206, 210 (1st Cir. 2012) (applying *Mt. Healthy* in a case alleging political discrimination); *Welch*, 542 F.3d at 936 (noting that *Mt. Healthy* has been applied to political discrimination claims). Indeed, the lower courts in *Branti* applied *Mt. Healthy*, but rejected the defendants' argument that the plaintiffs would have been discharged regardless of their political affiliation due to lack of competence.[3] *See Branti*, 445 U.S. at 512 n.6.

Thus, turning to the *Mt. Healthy* framework, Plaintiff cannot meet his initial burden. Assuming *arguendo* that Plaintiff's membership on the Board was protected conduct,[4] there are no facts which suggest that Plaintiff was fired as a result of his position on the Board. First, Plaintiff points to a letter to the editor of the *Berkshire Eagle* newspaper that Flynn wrote in 2015 when Plaintiff was running for the Board in which Flynn expressed the view that it was

---

[3] *Mt. Healthy* was not applied in *Elrod* because *Elrod* predated *Mt. Healthy* by a year, and, even if it had not, causation was not in issue in *Elrod*; there was no question that the plaintiffs had been discharged as a direct result of their political affiliations. *See Elrod*, 427 U.S. at 351.
[4] Plaintiff and Defendants simply assume that holding political office is protected First Amendment activity. Neither cites to any authority to support the proposition, nor has the court located any. Nevertheless, the court need not decide this issue to decide this motion. *See, e.g., Loftus v. Bobzien*, 848 F.3d 278, 285 (4th Cir. 2017) ("Although we have never recognized a First Amendment right to hold elected office, we need not decide whether such a right exists to resolve this case.").

"not healthy" for the Town's full-time fire chief to sit on the Board (Dkt. 40-2). The substance of Flynn's argument was that, if Plaintiff were to be elected to the Board, he would have to recuse himself from every decision concerning the fire department, which would leave only two voting members, and either one would be able to "block any affirmative decision involving the department" (Dkt. No. 40-2). Nothing in the letter suggests a discriminatory animus toward Plaintiff. Instead, the letter communicates to potential voters Flynn's structural concern with having all decisions regarding the Fire Department decided by only two Board members. Moreover, the temporal gap between Flynn's 2015 letter and the February 5, 2019 vote to terminate Plaintiff's employment is too great to support an inference of causation. *See González-Droz v. González-Colón*, 660 F.3d 1, 17 (1st Cir. 2011) ("In order to raise an inference of causation, temporal proximity must be close."). Moreover, both Flynn and Chabon voted to renew Plaintiff's employment contract in 2018 (Dkt. No. 47 at ¶ 9). Given Flynn's and Chabon's intervening 2018 votes to reappoint Plaintiff as Fire Chief, no reasonable juror could find that Flynn and Chabon voted to terminate Plaintiff's employment one year later in retaliation for his holding a seat on the Board. If Flynn and Chabon wanted Plaintiff out of his position as Fire Chief because of his position on the Board, they would have voted against his reappointment.

Second, Plaintiff points to Flynn's seeking feedback around Town regarding Plaintiff as Fire Chief and a member of the Board in the fall of 2018, in the aftermath of the discovery of the purchasing scam. It is unclear how Flynn's interest in the opinions of constituents on Plaintiff's fitness to continue as Fire Chief and on the Board in light of his participation in the purchasing scam is evidence of a discriminatory animus arising from Plaintiff's holding a seat on the Board.

Thus, viewing the facts in the light most favorable to Plaintiff, he fails to meet his initial burden under *Mt. Healthy*.

Even if Plaintiff made his prima facie showing, however, Defendants have met their burden to show that the adverse employment decision would have occurred whether or not Plaintiff was a member of the Board.  It is undisputed that Plaintiff was the victim of a purchasing scam which he failed to disclose to anyone in Town government for a period of six years, by which time it had cost the Town $25,000.  Immediately after the scam came to light, the Board initiated an investigation by Town Counsel, the results of which led to two executive session meetings of the Board.  During the first meeting, Chabon advised Plaintiff that he had every right to remain as a member of the Board, but Flynn indicated that they had just cause to fire him for violating the procurement laws under Mass. Gen. Laws ch. 30B if he did not resign as Fire Chief.  The parties discussed the idea of Plaintiff resigning from his position on the Board and as Fire Chief, in exchange for retaining employment with the Town as a full-time EMT, firefighter, and fire inspector.  At the second meeting, Plaintiff was presented with an amendment to his employment contract in line with what had been contemplated at the first meeting.  When Plaintiff rejected the proposed agreement, the Board provided Plaintiff notice and an opportunity to be heard before voting to terminate his employment.  Thus, Defendants have articulated a non-discriminatory ground for Plaintiff's discharge, and proven by a preponderance of the undisputed evidence viewed in the light most favorable to Plaintiff that Plaintiff's employment as Fire Chief would have been terminated as a result of his actions relative to the purchasing scam even if he did not simultaneously hold a seat on the Board.  No reasonable juror could find that Plaintiff would not have been fired as Fire Chief if he was not a member of the Board.  Plaintiff suggests that Defendants cannot show that he would have been

fired for poor job performance because Flynn and Chabon offered to keep him as a full-time employee in the fire department with many of his same responsibilities.  However, while there was discussion and an offer for Plaintiff to remain with the department in an inferior position if he resigned from the Board and as Fire Chief, there was never any discussion of Plaintiff remaining in the supervisory role of Fire Chief with its attendant administrative duties.

Plaintiff still has the opportunity to rebut Defendants' *Mt. Healthy* defense with evidence that it is in fact more likely than not that discrimination was a substantial or motivating factor in the adverse employment outcome.  Plaintiff has not come forward with any such evidence, however, and therefore Defendants are entitled to summary judgment in their favor on Count I of Plaintiff's complaint. *Barry v. Moran*, 661 F.3d 696, 705 (1st Cir. 2011) (quoting *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir. 1996)) ("[A] plaintiff alleging discrimination on the basis of political affiliation may escape summary judgment only by 'pointing to evidence in the record which, if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus.'").[5]

C. State Law Claims

Plaintiff's state law claims in Counts II-V are pending in this court as a result of the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *See Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017).  "[T]he Supreme Court has instructed that 'in the usual case in which

---

[5] In the alternative, Flynn and Chabon are protected by qualified immunity.  Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Solis-Alarcón v. United States*, 662 F.3d 577, 581 (1st Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  It was objectively reasonable for Flynn and Chabon to believe that Plaintiff could be terminated from his position as Fire Chief based on Town Counsel's report about the purchasing scam.  Accordingly, even if Flynn's and Chabon's actions did violate Plaintiff's First Amendment rights, they are protected by qualified immunity.

all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id*. (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); citing 28 U.S.C. § 1367(c)(3)). The First Circuit has repeatedly held that it can be an abuse of discretion for a federal district court to retain jurisdiction over pendent state law claims that remain in a case after a court has determined that judgment should enter on the sole federal claim that has been asserted. *Id.*; *see also, e.g., Best Auto Repair Shop, Inc. v. Universal Ins. Grp.*, 875 F.3d 733, 737 (1st Cir. 2017). Here, the court sees no reason to exercise supplemental jurisdiction over the remaining state law claims in this matter. The parties dispute Defendants' liability on the state law claims, and those disputes are better left to the state courts to resolve. Accordingly, Counts II-V of Plaintiff's complaint will be dismissed without prejudice to re-filing in state court if Plaintiff so chooses.

## IV.     CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (Dkt. No. 39) is GRANTED as to Counts I and VI of Plaintiff's complaint and as to all claims asserted against the Stockbridge Select Board. The remaining claims asserted in Counts II-V of Plaintiff's complaint are dismissed without prejudice. The Clerk's Office is directed to close the case on the court's docket.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  June 9, 2021